Case No. 14-1223, The Medicine Shoppe Petitioner v. Loretta E. Lynch and her official capacity as the Attorney General of the United States et al. Mr. Grass for the petitioner, Ms. Watkins for the respondents. Morning, Your Honor. Jeffrey Grass for the petitioner of the Medicine Shoppe. With your permission. Your Honor, this case is probably one of the most important since the United States announced its decision in the United States for Gonzales v. Oregon. Mr. Grass, before we get into your argument, the government has filed a motion to strike portions of your final brief on the grounds that it contains arguments not in the original brief. There are new arguments added and arguments deleted. Do you have a response to that? Your Honor, there were several iterations of that brief that were completed. There were parts of the brief that were moved around to make clearer the reading of the brief, but there was nothing substantial or material. Are rules limited to correcting typographical errors and adding references to the joint appendix? Which was done, Your Honor. But I said limited to that. For example, they point out, the government points out, that you rely on Gonzales in the final brief, but that's new. They say in the original brief you argue that the agency intentionally excluded exculpatory evidence, and in the final brief you delete the word exculpatory. In supporting an arbitrary and capricious argument, they say you've added three new cases. Is all that inaccurate? I mean, I looked at the brief and it looked to me like it was accurate. We've been relying on those same points of argument, Your Honor, since the beginning, since we first filed exceptions to the administrative law. I was asking about the difference between your original brief and the final brief. Not what you said in the district court. The federal rule of appellate procedure, 30C2B, says except for typographical errors, except for typographical errors, no other changes, that is, other than the changes to the joint appendix, no other changes may be made. Would you like me to respond here? Yes, that's why I asked you the question. Yeah, I went back and looked, and there were those changes that were made. Okay. Well, why don't you go ahead with your argument, but you must confine yourself to arguments based on the original brief. Yes, sir. Now, you can make your argument, but you cannot refer to any arguments in your final brief, to any cases in your final brief, or to any arguments deleted from the original brief. Okay? Yes, Your Honor. So go ahead and make your argument based on that. Well, under this court's precedent case law, it seems like the inquiry would be in two components. One would be whether or not the DEA exceeded the Controlled Substances Act by imposing a co-responsibility on pharmacists to dispense pursuant to a legitimate medical purpose. I think that that's been dealt with. Calling it a co-responsibility blurs the issue. Let's say there's a regulation that talks of what their burden is, and if they demanded more of him than what that says, then that would be error. But you didn't focus on that at all. Well, the opinion of the expert that the DEA relied on based her recommendation during the hearing on her disagreement with prescribing practices of the physicians, specifically whether 30 days of cough syrup was given as opposed to 14, whether or not a hydrocodone was prescribed with a non-controlled substance, skelaxin, these are all medical judgments. And the DEA refers to those as red flags of diversion, but the red flags concepts should be distinguished between what's resolvable and what's not. Resolvable red flags would be merely correctable errors by the pharmacist, by the pharmacy, that once resolved would be lawful prescriptions. If the expert is looking at the prescribing by a physician and the pharmacist calls the physician to confirm the prescription and the physician does confirm it, then the pharmacist dispenses it under this current rule. The DEA can go back and scrutinize that the pharmacist filled it, even though confirming it, and he shouldn't have. So that is inconsistent with state law. State law merely requires the pharmacist to authenticate the prescription, which is to verify that there is an existing physician-patient relationship. That's the duty of the pharmacist under state law. So your argument is that the Supremacy Clause doesn't operate here? Well, I've been told not to reference Gonzales v. Organ, but the court did rule in that case, Justice Kennedy announced, that Congress did not intend to confer the decision on medical care to the United States Attorney General. That legitimate medical purpose is a general term, and that defining these... I think whatever was held in Gonzales seems to me quite different from a notion that the responsibilities for enforcement of the Federal Act and responsibilities laid on pharmacists may not exceed anything demanded of state law. Isn't that so? I mean, is that standard Supremacy Clause doctrine? The Supreme Court held that the Supremacy Clause doctrine, as defined or utilized by the U.S. Attorney General in this context, did not apply. Because Congress did not clearly delegate to the United States Attorney General the authority to say what was a legitimate medical purpose and what wasn't. Texas law says that a pharmacist shall not dispense a prescription drug if the pharmacist knows, or should have known, that the order for such drug was issued without valid pre-existing knowledge. And the agency's point is that all these red flags should have put them on notice. Well, you have to take the red flags argument in the context of... That's why I was making the argument about what's resolvable, what's not. This is a hearing where the entire pharmacy database was excluded from the hearing. And this is prescribing in the context of a neighborhood family pharmacy where the pharmacist knows the patients and the physicians for over 10 years. And these red flags are almost a term of art as to what raises a pharmacist's suspicion. Does he know the patient? Does he not? Does he know the patient and the doctor for years and years and years? It makes these red flags less relevant. And it was the pharmacy owner's testimony during the hearing that he had known these patients and doctors, that had resolved these red flags in the patient database, and was not knowing or given really a duty of knowing the version might be possible, because he serviced the same people for years. So it would seem that the remedial measures in the two years between the inspection and the order to show cause, with Lackwood's testimony, should have been mitigating sufficient not to award the harshest sanctions. Okay, thank you, Mr. Rasmussen. Thank you.  Again, Lina Watkins, U.S. Department of Justice, on behalf of the Drug Enforcement Administration. Under the deferential standard of review that applies here, the agency's findings of fact are conclusive when supported by substantial evidence. If the sanction imposed is a reasonable one, then this court upholds the agency's decision. Purposes of the Controlled Substances Act are to combat drug abuse and elicit controlled substance traffic. And to achieve this, the statute and regulations establish a closed system of drug distribution. To maintain the closed system, drug dispensers, such as Petitioner, must comply with those rules. In this case, the agency found that Petitioner did not comply in many ways, and that its continued registration would not be consistent with the public interest.  First, there were more than 60,000 controlled substance doses for which Petitioner is responsible, and they have disappeared. An extraordinary number that the Deputy Administrator reasonably found amounted to egregious misconduct, and that this misconduct alone would support revocation. Second, there were numerous prescriptions from which Petitioner's pharmacist should not have dispensed controlled substances. As was just being discussed, a pharmacist has a corresponding responsibility to ensure that she fills only those prescriptions that are for legitimate medical purpose and issued in the usual course of professional practice. Petitioner's pharmacists did not meet this obligation. For example, they allowed customers to obtain a fill of only the controlled substance portion of a prescription that was for both controlled and non-controlled substances. In one instance, the prescriber had instructed against a partial fill specifically, and in several other instances, Petitioner's pharmacists returned the original prescription to the customer with no indication that the controlled substance had been dispensed, creating a risk of controlled substance aversion. In addition, their prescriptions were filled for highly abused combinations, duplicative excessive dosing, otherwise unusual dosing, and other prescriptions were facially invalid. The prescriptions themselves, which were in the record, photocopies, along with the expert's testimony regarding standards of pharmacy practice, established that Petitioner's pharmacists blatantly and repeatedly overlooked numerous red flags in violation of this corresponding responsibility. In addition, the Petitioner did not maintain adequate records for some of these and for other transactions. The ALJ and the agency properly rejected the pharmacy owner, Mr. Leck, was uncorroborated testimony on these points as unreliable. The government, having therefore established that Petitioner was responsible for acts inconsistent with the public interest, the Petitioner did not acknowledge this misconduct and did not present credible mitigating evidence to support a lesser sanction. If I can address just a couple of the points, the pharmacy database was information in the possession of the pharmacy. It was not offered for evidence. It was not excluded from evidence. The testimony of Mr. Leck was that he did not bring that information to the hearing. And so if it was excluded, it was excluded by Mr. Leck. On the point of the Texas law, an issue that was not, again, before the agency, at the time of the hearing, the government does not see any conflict in the Texas law. The Texas law does not require the dispensing of a prescription once it is verified, once it is verified that a physician has written the prescription. In fact, this would conflict with decades of law ever since Moore. We know that a prescription signature on a prescription does not make it a prescription issued for a legitimate purpose. In addition, the Hays case that's cited in the final order from the agency, a case from the circuit where the petitioner practices, is in the pharmacy context, confirms that a pharmacist has a duty to confirm that a prescription is for a legitimate purpose. In fact, this principle was recognized by the petitioner in pleadings before the agency, particularly in the- As you were, that duty does seem rather enormous. To make sure that the prescription was issued, what was your term? For a legitimate medical purpose. I mean, I can understand having red flags, but they seem to make sense. But to literally require the pharmacist to know that everything's legitimate is extraordinary. And so the record is that the pharmacist must take steps to resolve the red flags, and that is the evidence that was not in the record. And so when the agency was reviewing the record and deciding the case, what they had was the expert's testimony that there were red flags, that there was no evidence that there were steps taken to resolve the red flags, and that is what was consistent with the record evidence, which was the prescriptions. The expert testified that there should be some indication on the face of the prescriptions that steps were taken to resolve the red flags, and there was none. This medicine shop was located in San Antonio, Texas? That is correct. But I seem to recall reading something indicating that it was a franchise operation. It was a franchise operation. Were there more than one medicine shops in Texas? I can't speak to that situation in what the number of shops was in Texas, but each shop— Was there more than one? I don't know the answer to that, Your Honor. I don't know that that answer is in the record. Are some of these prescriptions filled by mail order? No. There's no indication of mail order, I believe, in the record. I believe these were all walk-in prescriptions. But the DEA's action here is directed only at this facility, right? It goes to only this— Not that big company. Yes. Not the parent. No, not the parent company, because each of the pharmacies would be separately registered with the DEA, and so this action concerned only the registration of this pharmacy at this location. Do you have anything else? I'm sorry, Your Honor? Do you have anything else? Just that the sanction here was consistent with the agency's prior precedent. None of the cases on which the— Is there anything other than a prior precedent? And consistent with this record, and that the petitioner did not take the steps to resolve the red flags. All right. And so the sanction was reasonable on the facts. In some substantial evidence, support of the agency's findings and revocation of the registration was not arbitrary and capricious. The government, therefore, respectfully requests that this court uphold the agency's decision and deny the petition. Okay. Thank you. No further questions. Thank you. Mr. Grass, I think he was out of town, right? Out of time? You have one minute, if you want. One minute. The only thing I would add, Your Honor, is to put the case in context. This pharmacy was not investigated or inspected as a result of its own conduct. There were no complaints or compliance issues. Rather, the DEA was investigating a doctor who— Does any of this make a difference? Well, it does because it goes to whether or not—we're talking about whether there is a knowing violation of the Controlled Substances Act, which would be a red, you know, constitute diversion. Well, the agency found that there was. The agency found that— Why does it make any difference how the investigation was initiated? Well, the agency found these deficiencies because of a standard that's flawed. Frankly, the red flags weren't noted on the face of the prescription. That's got nothing to do with how the investigation was initiated, right? That's irrelevant to this case. Well, I think it goes to Mr. Lekwa's pattern and practice of business. I think if somebody has been in practice for 10 or more years in the same area without any prior complaints or disciplinary history, I mean, that is one measure under the Controlled Substances Act. Whether a registration is to be granted or kept is what prior actions by its own licensing board. So that's very relevant. What's your explanation of the missing drugs? The audit turned up thousands. One reads that statement, and, of course, it's alarming, but there are shortages and overages. This pharmacy had kept 12 years of inventory properly in that pharmacy. The inventory that was going on and the audit that was going to be conducted would have reconciled. You can tell just based on the testimony of the DI, the version of the investigator. They had the records in the pharmacy, but the dates and substances quantities weren't properly noted. The investigator didn't inform Lekwa that there was a deficiency where he could have provided it at that time. She never brought it up again. So the records were there. Mr. Ratz, you're out of time. Thank you very much. The case is submitted.
judges: Tatel, Williams, Randolph